UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Todd Jeffrey Kadel,                                    Civil No. 13-346 (ADM/FLN)

                        Petitioner,

        v.                                              **REPORT AND RECOMMENDATION**

Tom Roy,

                        Respondent.

_____

Todd Jeffrey Kadel, *Pro Se*, for Petitioner.
David J. Hauser for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Todd

Jeffery Kadel's (Petitioner's) application for a writ of habeas corpus pursuant to 28 U.S.C. §

2254 (ECF No. 1). Petitioner is challenging his 2009 conviction in the state district court for

Otter Tail County, Minnesota for a Controlled Substance Crime in the First Degree. Respondent

filed an answer and memorandum in opposition to the petition (ECF Nos. 9 and 10).[1] Petitioner

filed a reply brief (ECF No. 11) in support of his petition. The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, this Court recommends that the Petition for Writ of Habeas

Corpus (ECF No. 1) be **DENIED**.

## I. BACKGROUND

**A.      Factual Background**

---

[1]                     ECF No. 8 and ECF No. 10 appear to be duplicate filings of Respondent's
Memorandum in Opposition.

In July 2009, a jury convicted Petitioner for the possession and sale of methamphetamine in violation of Minnesota Statute Section 152.021, Subdivisions 1(1) and 3(a). Mem. in Opp'n to Pet. 1, ECF No. 10. Petitioner was subsequently sentenced to 155 months in prison and is currently confined at the Minnesota Correctional Facility-Faribault. *Id*.; Pet. 1, ECF No. 1. The undersigned accepts the facts of this case as stated by the Minnesota Court of Appeals:

> In October and November 2008, officers with the West Central Drug Task Force conducted controlled methamphetamine buys through the use of confidential informants (CIs) wearing "wires" that enabled the police to monitor the CIs' conversations. Various people, including Kadel, were involved in the sales transactions.
>
> The first buy took place on October 22, when a CI contacted A.J. under the guise of wanting to buy methamphetamine. The CI then met with A.J. and S.A. and the three went to J.B.'s residence. In one of the monitored conversations, S.A. stated that her supplier was a woman whose boyfriend was named Kadel. The police saw two females leave the residence and drive to a parking lot behind a laundromat. J.B. testified that Kadel lived in an apartment above the laundromat and that, on October 22, she and S.A. drove to Kadel's apartment, obtained 1.7 grams of methamphetamine from him, and later sold all but 0.4 grams to the CI.
>
> The police arranged a second buy on November 10. A CI went to J.B.'s residence and asked to buy methamphetamine. J.B. said that she had none but could get some. She testified that she then drove to Kadel's residence, obtained methamphetamine from him, and sold 5.8 grams to the CI. J.B.'s cell phone records for November 10 revealed eight calls to a cell phone later found in Kadel's possession.
>
> A third controlled buy, on November 13, involved a CI and C.B. C.B. drove to Kadel's apartment, returned 20 to 25 minutes later, and sold 3.5 grams of methamphetamine to the CI. At the trial, C.B. testified that she obtained the drug from M.W., Kadel's girlfriend.
>
> The final buy occurred on November 14. The police watched a CI go into J.B.'s residence and then saw J.B. leave. They followed her to Kadel's apartment but did not complete their surveillance of her at that location. They later saw her return to her residence where she sold 6.5 grams of methamphetamine to the CI. J.B.'s cell phone records showed three calls on that day to the phone found in Kadel's possession.
>
> Upon the information acquired in the controlled buys, the police obtained a warrant to search Kadel's apartment, and they executed it on November 15. At

the apartment, police encountered J.B. and two children, including M.W.'s ten-year-old child. Kadel was hiding in a closet in the bedroom. When the police ordered him to come out, he dived onto the bed, where the police found 11.1 grams of methamphetamine. The police seized a total of 87.2 grams of methamphetamine from the apartment, some of which was found near where J.B. was sitting when they entered. In addition to methamphetamine, the police seized a total of 97.2 grams of methamphetamine from the apartment, some of which was found near where J.B. was sitting when they entered. In addition to the methamphetamine, the police seized a large amount of currency, Kadel's cell phone, a police scanner with a list of frequencies for law-enforcement agencies, plastic baggies, syringes, digital scales, and other items characterized as "indicia of drug trafficking."

At the trial, J.B. testified that she had purchased methamphetamine three times from Kadel between October 22 and November 14, 2008, and that Kadel and M.W. both sold methamphetamine. Kadel claimed that he only used the drug and that M.W. was the seller. M.W. confirmed Kadel's statements in her testimony.

*State v. Kadel*, A09-2053, 2011WL 9134, at *1-2 (Minn. Ct. App. Jan. 4, 2011).

**B.      Direct Appeal**

Following his conviction and sentence, Petitioner filed a direct appeal with the Minnesota Court of Appeals. Resp't App. 48, ECF No. 10-1. On direct appeal, Petitioner claimed that: (1) his conviction was based on the testimony of an accomplice, J.B., and there was insufficient evidence to corroborate that testimony; (2) the district court committed plain error in failing to submit an accomplice instruction to the jury; (3) the court erred in failing to suppress evidence seized pursuant to a defective search warrant; and (4) there was insufficient evidence that Petitioner in fact possessed the seized items, because M.W. accepted responsibility for all methamphetamine found in the apartment. *Id*. at 49-50. Additionally, Petitioner filed a supplemental *pro se* brief specifically challenging the validity of the search warrant. *Id*. at 101-102.

The Minnesota Court of Appeals rejected Petitioner's arguments. As to Petitioner's assertions regarding alleged accomplice J.B., the Court of Appeals held that as a matter of law

3

J.B. was not Kadel's accomplice, and therefore the district court did not err in failing to issue an accomplice testimony instruction to the jury. *Kadel*, A09-2053, 2011 WL 9134, at *2-4.   The court further held that the warrant utilized to execute a search of Kadel and M.W.'s apartment was supported by sufficient probable cause. *Id*. at *5. Although Petitioner specifically identified three alleged misstatements and four omissions from the search warrant affidavit,[2] the court found that the search warrant contained the requisite probable cause:

> Even without the alleged misstatements and with the addition of the alleged omissions, the affidavit describes four controlled drug sales from the apartment building where Kadel resided. None of the alleged inaccuracies is sufficiently relevant to defeat a finding of probable cause when the totality of the circumstances is considered.

*Id*. Lastly, the court concluded that there was sufficient evidence to support Petitioner's convictions for possession of twenty-five or more grams of methamphetamine and intent to sell ten or more grams of methamphetamine. *Id*. at *5-6. Petitioner appealed the Court of Appeal's decision to the Minnesota Supreme Court; the court, however, summarily denied Petitioner's

---

[2]

The Minnesota Court of Appeals identified the alleged misstatements and omissions as follows:

There were three alleged misstatements in the affidavit. In summary, they were that J.B. and S.A., not J.B. and her daughter, drove to the location of the first buy; the CI gave J.B. $300, not $400, and J.B. gave $70 back to the CI; and the affiant did not contact the owner of Kadel's apartment building on the day the affiant applied for the warrant but contacted her earlier, because the owner was out of town that day. There were four alleged omissions, namely, while J.B.'s car was parked near the buy location an unidentified person got in; the affiant could not take photos of a female leaving the CI's car and going toward or returning from the apartments where the buys occurred; J.B. was out of sight for nearly 45 minutes during one of the buys; and on the way to another buy, C.B. stopped to pick up a T.V.

*Kadel*, 2011WL 9134, at *5.

4

application for further review on direct appeal. ECF No. 10-1 at 104.

## C.    Post-Conviction Proceedings

Subsequently, Petitioner filed for post-conviction relief under Minnesota Statute 590.01. Petitioner's post-conviction motion raised ineffective assistance of counsel claims for both his trial and appellate counsel. ECF No. 1 at 5. Petitioner argued that his trial counsel was ineffective for failing to adequately challenge the validity of the search warrant. *Id*. Specifically, Petitioner posited that certain trial testimony exposed misstatements and omissions surrounding the search warrant, and therefore the search warrant lacked sufficient probable cause. *Id*. Because of these "revelations" unveiled at trial, Petitioner contends that trial counsel erred in failing to renew a validity challenge to the search warrant in accordance with *Franks v. Delaware. Id*; *see also Franks,* 438 U.S. 154, 155-56 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request"). Additionally, Petitioner claims his appellate counsel was ineffective for three reasons: (1) for not sufficiently challenging the search warrant; (2) for failing to raise the claim of ineffective assistance of trial counsel on appeal; and (3) for failing to move for a stay of Petitioner's appeal to allow the court to conduct post-conviction relief proceedings based on the ineffective assistance of trial counsel. ECF No. 1 at 5.

The trial court found that Petitioner's claim pertaining to ineffective assistance of trial counsel was procedurally barred pursuant to *State v. Knaffla.* ECF No. 10-1 at 108; *see also Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) (barring a petitioner from subsequently raising a

claim in a post-conviction relief proceeding which was known, but not raised on the petitioner's direct appeal); Minn. Stat. § 590.01, subd. 1(2) ("A petition for post conviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). Next, the trial court addressed Petitioner's claim of ineffective assistance of appellate counsel on the merits and concluded that the appellate counsel's performance did not fall below "an objective standard of reasonableness." ECF No. 10-1 at 108; *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (holding that a counsel's performance is not ineffective if there is no evidence that the representation "fell below an objective standard of reasonableness").

On appeal, the Minnesota Court of Appeals affirmed the trial court's denial of the postconviction relief petition, finding that the ineffective assistance of trial counsel claim was procedurally barred under *Knaffla* and that the ineffective assistance of appellate counsel claim failed on the merits. *See generally Kadel v. State*, No. A12-0700, 2012 WL 4329240 (Minn. Ct. App. Dec. 18, 2012). The Minnesota Supreme Court denied review of the postconviction petition on December 18, 2012. ECF No. 10-1 at 154.

**D.      Present Habeas Petition**

In the present case, Petitioner raises two arguments in support of his petition for habeas relief, which are essentially identical to those raised in Petitioner's postconviction relief action: (1) ineffective assistance of trial counsel insofar as Petitioner's trial counsel failed to challenge the validity of the search warrant under *Franks v. Delaware* due to material misstatements and omissions which were revealed during trial; and (2) ineffective assistance of appellate counsel for failure of appellate counsel to incorporate relevant omissions and misstatements when

6

challenging the validity of the search warrant on direct appeal and for failure to claim ineffective assistance of trial counsel and move for a stay of the direct appeal. [3]

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets forth the standard that governs this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]     Petitioner specifically argues his trial counsel was ineffective for:

> failing to renew the *Franks v. Delaware* motion to challenge the search warrant as to Petitioner's premises, brought at Petitioner's Omnibus Hearing, at trial after testimony by police agents revealed additional material misstatements in that search warrant affidavit and twelve critically omissions from it, all of which misstatements and omissions were deliberately or recklessly made and either intentionally false or reckless as to the truth material to probable cause, where the combined effect of all misstatements in, and omissions from that affidavit was to deprive that search warrant application of probable cause.

ECF No. 1 at 8. Petitioner further claims that his appellate counsel was ineffective for failing to:

> (a) incorporate within Claim III of [Petitioner's] direct appeal, as additional factual bases for *Franks v. Delaware* relief by the trial court, all of the aforesaid trial revelations as to additional misstatements in, and omissions from the search warrant affidavit; (b) raise on appeal the issue of ineffectiveness of Petitioner's dual trial counsel, in failing to renew at trial the *Franks v. Delaware* motion as to misstatements in, and omissions from the search warrant affidavit, as alleged in Ground One herein; and (c) move for stay of said direct appeal, and for remand to conduct postconviction relief proceedings based on said claim of ineffective assistance of trial counsel.

ECF No. 1 at 54.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme

Court discussed the meaning of this statute, and how it should be applied by the federal district

courts. The Court held:

> [A] state-court decision can be "contrary to" this Court's clearly established
> precedent in two ways.  First, a state-court decision is contrary to this Court's
> precedent if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law.  Second, a state-court decision is also contrary to this
> Court's precedent if the state court confronts facts that are materially
> indistinguishable from a relevant Supreme Court precedent and arrives at a result
> opposite to ours . . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

*Id.* at 405, 413.  The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable . . . . [A] federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409, 411.

Therefore, a federal district court is not permitted to conduct its own de novo review of a

habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner

has identified, and substantiated, a specific error committed by the state courts. Moreover, he

must show that the state courts committed the type of error that is actionable under § 2254(d), as

that statute has been interpreted by the Supreme Court in *Williams*. Demonstrating actionable

error requires that a petitioner, as a threshold matter, present a federal question in his petition for

relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

### III. LEGAL ANALYSIS

**A.     Legal Standard**

Petitioner argues that he was denied the right to effective assistance of both appellate and trial counsel. The Sixth Amendment ensures a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. To adequately present an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) counsel's representation was deficient and (2) the deficiency prejudiced petitioner's case. *Id*. at 687. Both prongs under the *Strickland* test must be satisfied in order for a petitioner to achieve relief; if either prong is unsatisfied, the court need not engage in an analysis of the remaining *Strickland* prong. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Under the first *Strickland* prong of deficiency, a petitioner must show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The prong requires that petitioner establish that "counsel's performance fell below an objective standard of reasonableness." *Id*. at 687-88.

To establish ineffective assistance of counsel pursuant to the second prong, a petitioner must demonstrate that the deficient performance prejudiced his or her defense. In other words, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Showing some conceivable effect of counsel's deficiency is insufficient. Instead, "reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

When presented with an ineffective assistance of counsel claim in the context of a § 2254 petition, the question "is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether it was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). As the *Strickland* test establishes a general standard, a state court is given significant latitude to reasonably determine that a defendant failed to satisfy this standard. *Id*.

**B.      Ineffective Assistance of Trial Counsel**

Petitioner asserts that his trial counsel erred by failing to renew a challenge at trial to the search warrant used to obtain entry and search Petitioner's residence. According to Petitioner, trial testimony revealed that the search warrant affidavit contained six misstatements and twelve omissions.[4] Mem. in Supp. of Pet. 3, ECF No. 6. Thus, Petitioner argues that his trial counsel erred by failing to renew the *Franks* motion because "the total of all material misstatements in that affidavit, plus all omissions from it, reveal the true lack of probable cause for the search of Petitioner's premises." *Id*. at 8 (emphasis in original). The Court concludes that Petitioner has procedurally defaulted on this claim and therefore recommends that this ground for relief be denied.

It is well-settled that a state prisoner cannot raise a federal constitutional claim for the first time when bringing a federal habeas corpus petition. *O'Sullivan v. Boerckel*, 526 U.S. 838,

---

[4]      The six misstatements and twelve omissions cited by Petitioner can be found in p. 33-37 of ECF No.1. These pages are identified in Petitioner's numbering scheme of ECF No. 1 as A26-A30.

842 (1999). Section 2254(b) specifies that a federal district court may entertain a state prisoner's habeas corpus petition only when that individual has exhausted all applicable state court remedies. 28 U.S.C. § 2254(b). The Supreme Court has summarized this exhaustion requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claims.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotations omitted). Thus, to adequately exhaust state court remedies, a petitioner must fairly present his or her constitutional claims to the highest available state court prior to seeking federal review pursuant to a habeas petition. *O'Sullivan*, 526 U.S. at 842 ([T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

However, a claim has not been "fairly presented" in state court if a state appellate court declines to review a claim on the merits because the petitioner violated a state procedural rule when raising the claim. *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994) (citing *Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994)). If a claim has not been fairly presented in state court, the claim is procedurally defaulted for purposes of a federal habeas corpus petition. *Id.*

In *Knaffla*, the Minnesota Supreme Court specified that any matter raised in a petitioner's direct appeal and all claims that were known to the petitioner but not raised on direct appeal are barred from consideration in subsequent post-conviction petitions. 243 N.W.2d at 741 (holding that once a prisoner has directly appealed a sentence, "all matters raised therein, and all claims

11

known but not raised, will not be considered upon a subsequent petition for postconviction relief"). Accordingly, if a Minnesota appellate court declines to consider a claim on the merits due to the claim being barred under the *Knaffla* rule, the claim is likewise procedurally barred for the purposes of a petitioner seeking federal habeas relief. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997).

Here, on appeal from the post-conviction proceedings, the Minnesota Court of Appeals refused to address the merits of Petitioner's ground for relief related to ineffective assistance of trial counsel. *Kadel*, 2012 WL 4329240 at *2-3. The Minnesota Court of Appeals held that because the contested misstatements and omissions were revealed at trial, Petitioner's ineffective assistance of trial counsel claim was known at the time of direct appeal. Because the claim was "known but not raised" on direct appeal, the Minnesota Court of Appeals concluded that the claim was barred pursuant to *Knaffla*.[5] *Id.* Accordingly, the claim was not fairly presented in

---

[5]

In his postconviction proceeding, Petitioner argued that the *Knaffla* rule was inapplicable because the Court needed to first determine "whether that claim could truly have been decided on direct appeal solely upon the district court record as it then was." *Kadel*, 2012 WL 4329240 at *2; *see also Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004) (finding that an ineffective assistance of trial counsel "is not barred by *Knaffla* if it cannot be determined from the district court record and requires additional evidence"). The Minnesota Court of Appeals disagreed with this contention, stating that "[t]he record reflects that additional evidence was not required to determine whether appellant's ineffective-assistance-of-counsel claim has merit. The alleged misstatements and omissions pertaining to the search warrant were revealed at trial." *Kadel*, 2012 WL 4329240 at *3.

Petitioner repeats that same argument here, stating that *Knaffla* does not present a procedural bar because "it is not possible to determine from the record the reason that Petitioner's dual trial counsel did not renew their pretrial *Franks* motion after stunning revelations at trial." ECF No. 6 at 21. In sum, Petitioner appears to be challenging the state court's application of *Knaffla*. It is not within the purview of this Court, however, to re-examine the state Court's conclusion regarding the

Minnesota State Courts and Petitioner's ineffective assistance of trial counsel claim therefore procedurally defaulted for federal habeas corpus purposes.

Two exceptions exist, however, that allow a petitioner to assert a procedurally defaulted claim for review in a federal habeas petition. A claim that was procedurally defaulted in state court may be considered if the petitioner establishes either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) demonstrates that a "fundamental miscarriage of justice" would occur if the federal court declined to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To assert a claim under the "cause and prejudice" exception, a petitioner must show that he suffered actual prejudice due to some "external impediment" preventing him or her from timely presenting the claim to the highest state court in accordance with proper procedure. *Id.* at 753; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) (stating that to establish cause for the default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Furthermore, a petitioner satisfies the "fundamental miscarriage of justice" or "actual innocence" exception by "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The Court finds no basis in the record to support an exception under either standard. First, nothing before the Court suggests that Petitioner's failure to comply with the procedural

---

applicability of *Knaffla* to Petitioner's postconviction claims, and the Court therefore declines to do so here. *See Murray v. Hvass*, 269 F.3d 896, 899 (8th Cir. 2001) ("[I]t is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law."); *Owsley v. Bowersox*, 234 F.3d 1055, 1058 (8th Cir. 2000) ("A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis.").

requirements set forth in *Knaffla* was the result of some form of external impediment.[6] Because there is no showing of the "cause" component of this standard, it is unnecessary for the Court to examine whether the "prejudice" component of the standard is satisfied. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) ("Since [the petitioner] has not shown adequate cause to overcome the procedural bar in his case, . . . we need not consider the issue of actual prejudice.").

Further, Petitioner has offered no new evidence to demonstrate that he did not commit the crime for which he was convicted, as required under the "actual innocence" exception. This exception is reserved "only for truly persuasive demonstrations of actual innocence," based on reliable new evidence which shows "it is more likely than not that no reasonable juror would

---

[6]
> The Court does acknowledge that "[i]n appropriate cases, constitutionally ineffective assistance of counsel can serve as a cause that allows [the court] to consider a defaulted argument." *Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("A claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."). However, to the extent Petitioner may be arguing that his appellate counsel's failure to raise this issue caused the procedural default, Petitioner's argument fails.
>
> "To determine whether any ineffectiveness constituted cause for [Petitioner's] procedural default on the underlying ineffectiveness claim, the court must consider whether [Petitioner's] counsel was ineffective in the first instance." *Jones v. McKinney*, No. C02-2032, 2003 WL 1860556, at *11 (N.D. Iowa Apr. 9, 2003). In the postconviction proceedings, the Minnesota Court of Appeals specifically rejected Petitioner's Sixth Amendment claim on the merits regarding appellate counsel's actions. *See Kadel*, 2012 WL 4329240 at *3-4. Likewise, for the reasons listed in Section C of this Report and Recommendation, this Court also rejects the claim on the merits, finding that appellate counsel's performance did not constitute ineffective assistance of counsel. Accordingly, constitutionally ineffective assistance of appellate counsel cannot be used to establish "cause" for the procedurally defaulted claim.

have convicted [the petitioner] in light of the new evidence." *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (citations omitted). Thus, to qualify for this exception, Petitioner would need to present some compelling new evidence which would establish conclusively that he is innocent of the crimes for which he was convicted. Petitioner has made no such showing. Petitioners brief, in alleging the ineffective assistance of counsel claims at the trial and appellate level, focuses primarily on the misstatements and omissions allegedly made when procuring the search warrant for Petitioner's residence. These misstatements and omissions certainly do not amount to "truly persuasive demonstrations of actual innocence" required by the exception. *Cox*, 398 F.3d at 1031.

Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted as it was not fairly presented in proper procedural format in the Minnesota state courts. Moreover, the procedural default cannot be excused under either the cause and prejudice or actual innocence exceptions. This claim is therefore procedurally barred and the Court recommends this ground for relief be denied.

**C.     Ineffective Assistance of Appellate Counsel**

In his second ground for habeas relief, Petitioner asserts that his appellate counsel was ineffective for failing to (1) incorporate relevant omissions and misstatements when challenging the validity of the search warrant on direct appeal, (2) assert an ineffective assistance of trial counsel claim; and (3) move for a stay of the direct appeal. ECF No. 1 at 54. The Court shall consider separately the three facets of Petitioner's claim.

**1.     Failure to incorporate relevant misstatements and omissions when challenging the search warrant**

15

Petitioner asserts that appellate counsel's performance was deficient due to counsel's failure to include certain arguments when challenging the validity of the search warrant used to search Petitioner's residence. ECF No. 6 at 23-24. On direct appeal, appellate counsel argued that the district court erred in denying a motion to suppress evidence on the basis of misrepresentations and omissions related to the search warrant affidavit. ECF No. 10-1 at 86-95. Petitioner argues that appellate counsel's representation was deficient because the arguments addressed on appeal were limited to misrepresentations already argued in the original motion to suppress evidence at the trial level and specifically did not contain three additional misstatements and twelve omissions revealed at trial. ECF No. 6 at 23. Petitioner therefore contends that appellate counsel's decision to not include these additional factual assertions "drastically reduced the persuasive power of Claim III in that appellate brief, in turn resulting in rejection of that claim by the Court of Appeals." *Id.*

An ineffective assistance of counsel claim cannot be based on an attorney's failure to raise an argument that is without merit. *Gray v. Bowersox*, 281 F.3d 749, 756, n.3 (8th Cir. 2002). Indeed, effective appellate advocacy often includes narrowing the scope of arguments to focus the Court's attention on the most meritorious of claims. *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.")). As the Eighth Circuit has stated, "Appellate counsel need not raise every colorable claim, . . . and, to be effective, counsel often must screen out weaker issues." *Donnel v. Dormire*, No. 99-1712, 2000 WL 84421, at *1

(8th Cir. Jan. 12, 2000).

Furthermore, when a legal argument is meritless, it follows that a petitioner does not suffer prejudice when such an argument was not raised by appellate counsel on direct appeal. *See Thompson v. Jones*, 870 F.2d 432, 435 (8th Cir. 1988) (concluding that a petitioner was not prejudiced by appellate counsel's failure to include a meritless claim on appeal).

In evaluating appellate counsel's failure to include the additional factual misstatements and omissions indicated by Petitioner, the Minnesota Court of Appeals stated: "A review of the search-warrant affidavit, in conjunction with the alleged misstatements and omissions cited in appellant's petition for postconviction relief, reveals that the alleged misstatements and omissions were immaterial and were not relevant to the determination of probable cause." *Kadel*, 2012 WL 4329240 at * 4. The Court agrees with this assessment. Petitioner's appellate counsel contested the validity of the search warrant at issue extensively—however, appellate counsel's argument focused on the arguments previously asserted by trial counsel in the original suppression motion. None of the misstatements or omissions identified by Petitioner, even when taken together, were so egregious as to implicate the probable cause determination. Petitioner's appellate counsel cannot be faulted for failing to include the additional specific misstatements and omissions identified by Petitioner.

Accordingly, Petitioner was not prejudiced by appellate counsel's failure to raise meritless arguments pertaining to the validity of the search warrant affidavit. Due to this lack of prejudice, the Court need not address whether appellate counsel's performance was deficient for failing to include the identified misstatements and omissions. *See Apfel*, 97 F.3d at 1076.

**2.      Failure to assert an ineffective assistance of trial counsel claim on appeal**

17

Petitioner further suggests that he was denied the right to effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal an ineffective assistance claim pertaining to Petitioner's trial counsel. Petitioner claims that appellate counsel erred by not addressing on direct appeal trial counsel's failure to renew a *Franks* challenge surrounding the omissions and misstatements in the search warrant affidavit. ECF No. 6 at 25.

The Minnesota Court of Appeals rejected this argument, stating that when a petitioner bases an ineffective assistance of appellate counsel claim on that counsel's failure to raise an ineffective assistance of trial counsel claim, it must first be established that trial counsel was indeed ineffective. *Kadel,* 2012 WL 4329240 at * 3 (citing *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007)). Although the Minnesota Court of Appeals concluded that Petitioner's ineffective assistance of trial counsel claim was *Knaffla* barred, the court additionally concluded that the claim was substantively without merit because the alleged misstatements and omissions pertaining to the search warrant affidavit were immaterial. *Id*. at *4. Thus, the Minnesota Court of Appeals dismissed Petitioner's claim of ineffective assistance of appellate counsel. *Id*.

Petitioner's trial counsel cannot be faulted for failing to raise arguments the Minnesota Court of Appeals found to be without merit. *See Gray*, 281 F.3d at 756, n.3. It necessarily follows that Petitioner's appellate counsel cannot be faulted for neglecting to call into question trial counsel's failure to assert meritless arguments. *See Zinzer v. Iowa*, 60 F. 3d 1296, 1299 (8th Cir. 1995) ("Because [petitioner's] ineffective assistance of trial counsel claim was unlikely to succeed on direct appeal, appellate counsel did not prejudice [petitioner] by failing to raise the [ineffective assistance of trial counsel] claim."). Therefore, Petitioner cannot establish prejudice

under the *Strickland* standard as a result of appellate counsel's failure to bring an ineffective assistance of trial counsel claim on direct appeal. *Thompson*, 870 F.2d at 435 (8th Cir. 1988).

### 3.      Failure to move for a stay of appeal

Lastly, Petitioner asserts that his appellate counsel erred in failing to "move for stay of said direct appeal, and for remand to conduct [a] postconviction relief proceeding based on said claim of ineffective assistance of trial counsel." ECF No. 1 at 54. Petitioner appears to be arguing that appellate counsel was ineffective insofar as counsel failed to (1) move for a stay of the direct appellate process, and (2) assert the ineffective assistance of trial counsel claim in a separate postconviction action.

The Minnesota Supreme Court has held that in certain instances, it is proper to assert an ineffective assistance of trial counsel claim in a postconviction hearing prior to a direct appeal. *Roby v. State*, 531 N.W.2d 482, 484, n. 1 (Minn. 1995). When a claim of ineffective assistance requires additional factfinding, it is appropriately raised in a postconviction proceeding, even if such a claim was known at the time of a direct appeal. *Robinson v. State*, 567 N.W.2d 491, 495 (Minn. 1997) (stating that ineffective assistance of counsel regarding communication of a plea offer was properly raised in a postconviction proceeding, even when such a claim was known at the time of direct appeal). In *Torres v. State*, the Minnesota Supreme Court further articulated this distinction:

> [O]ur rule recognizes that not all ineffective assistance of trial counsel claims are alike. A claim of ineffective assistance of counsel that can be decided on the basis of the trial court record must be brought on direct appeal. . . . But a claim of ineffective assistance of trial counsel that cannot be decided on the district court record because it requires additional evidence need not be brought on direct appeal and may be brought in a postconviction petition.

688 N.W.2d at 572.

Here, however, the legal basis for Petitioner's claim of ineffective assistance of trial counsel was known at the time of trial and no further factual determinations were needed; the alleged misstatements and omissions surrounding the search warrant affidavit were revealed through trial testimony and trial counsel chose at that time not to renew a motion to suppress. The state court concluded that "[t]he record reflects that additional evidence was not required to determine whether appellant's ineffective-assistance-of-counsel claim has merit." *Kadel*, 2012 WL 4329240 at * 3. Thus, appellant counsel cannot be faulted for failing to move for a stay of the appellate procedure in order to assert the claim in postconviction proceedings when no further evidentiary hearing was needed and the claim could be resolved on the record of the direct appeal. Any motion to stay in this context would be meritless. *See Gray*, 281 F.3d at 756, n.3 (ineffective assistance claim cannot be based on counsel's alleged failure to raise a meritless argument). Thus, this aspect of Petitioner's ineffective assistance of appellate counsel claim must also be denied.

In conclusion, Petitioner has not shown that the state court's decision regarding his ineffective assistance of appellate counsel claim was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, habeas relief is not warranted and the Court recommends that this claim be denied on the merits.

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1)      Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody (ECF No. 1) be **DENIED**;

2)       This matter be **DISMISSED WITH PREJUDICE**.

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.


DATED: December 11, 2014            _____*s/Franklin L. Noel*_____
                                                                          FRANKLIN L. NOEL
                                                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 26, 2014**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.